ST. PAUL, J.
 

 Plaintiff alleges that on July 5, 1921, it sent defendant, for collection and credit, five
 
 acceptances
 
 of the Jennings Naval Stores Company (i. e., five drafts drawn upon, and accepted by, said company) each for the sum of $2,500, and payable as follows: One on Saturday July 9, 1921, one on Monday July 11th, one on Tuesday July 12th, one on Monday July 18th, and one on Monday July 25th; that the two first were duly paid and credited on July 11th when both became due; that the two last were not paid and were promptly returned to it; that the one due July 12th was duly paid that day, but was never credited nor the proceeds thereof ever remitted to plaintiff.
 

 And for reason why plaintiff says that said acceptance, due July 12th, was paid that day, it alleges: That in order to pay and discharge said acceptance of $2,500 and another of $1,-000 due the same day in favor of the Grant State Bank of Colfax, La., said Naval Stores Company arranged with defendant for a small credit (by overdraft) of $100, and to deposit two checks, one for $2,450 on plaintiff and one for $950 on said Grant State Bank, both to be guaranteed by the banks on which' drawn; that said guaranties were .duly given by wire by said banks; that said two checks were thereupon duly deposited by said Naval Stores Company with the understanding that said deposit and credit might be drawn against to pay said acceptances; that said Naval Stores Company then drew its check upon defendant for $3,500, and delivered same to defendant for the purpose of paying-said two acceptances; but that defendant, instead of applying said sum to the payment of said acceptances, appropriated the same to cover an overdraft which said Naval Stores Company then owed defendant.
 

 Wherefore plaintiff prays for judgment against defendant for $2,500, the amount of the acceptance in its favor.
 

 I.
 

 The defense set up in the answer is, in substance, as follows: (1) That prior to July 12, 1921, the Jennings Naval Stores Company, a depositor in the defendant bank, had overdrawn its account, and that defendant notified it of the fact and demanded either deposits or security to cover said overdraft: (2) that, because of the fact that prior thereto, several country checks deposited by said Naval Stores Company had been refused payment by the banks on which drawn, defendant refused further to accept from it for deposit any other such checks unless first guaranteed by the banks on which drawn; and (3) that said two checks on plaintiff and on the Grant State Bank were not deposited by said Naval Stores for the purpose of taking
 
 *909
 
 up said acceptances in favor of plaintiff and said Grant State, Bank, but solely for the purpose of covering the abovesaid overdrafts.
 

 II.
 

 The part of the answer which sets up that the Naval Stores Company had overdrawn its account prior
 
 to
 
 July 12, 1921, and that defendant was seriously concerned about said
 
 overdrafts,
 
 seems to have been put in under a misapprehension of the facts.
 

 As shown by Appendix A, hereto annexed, the Naval Stores Company had, in the 54 days next preceding July 12th, overdrawn its account as follows only, to wit: On Monday May 23d for $49.35, increased to $2,604.-60 on Tuesday May 24th, and covered in full on Wednesday May 25th; (2) on Friday June 24th for $346.09, increased to $546.52 on Monday June 27th, and covered in full on Tuesday June 2Sth; (3) on Thursday July 7th for $19.01, covered in full on Friday July Sth; and (4) on Monday July 11th, for $94.-01, of which more hereafter.
 

 On the other hand, as shown by Appendix C, hereto annexed, the Naval Stores Company was overdrawn at the close of business on July 12th for the sum of $1,568.98, but was none the less allowed to
 
 inorease
 
 that overdraft from day to day thereafter until it reached $1,775.43 on Friday July 22d; an increase of $178.75 in the ten days
 
 after
 
 July 12th.
 

 III.
 

 That part of the answer which sets up that, because prior to July 12th several country checks deposited by the Naval Stores Company had been refused payment by the banks on which drawn, defendant therefore refused further to accept from it for deposit any other such checks unless first guaranteed by the banks on which drawn, is admittedly based on fact; but whether the meaning thereof was that such cheeks would not be accepted at all, or merely that the Naval Stores Company would not be allowed to draw against such checks, is so intimately connected with the matter last set up in the answer that the two cannot be separated; for that simply begs the question whether on July 12th the two country cheeks which give rise to this controversy were deposited in the defendant bank,
 
 not
 
 for the purpose of taking up the two acceptances due that day, but merely in the usual course of business, and, as defendant claims, solely for the purpose of covering in part a certain overdraft which arose unexpectedly that day, and to which we will refer hereafter.
 

 IV.
 

 Now, on the morning of Monday July 11th, as shown by Appendix B, hereto annexed, the Naval Stores Company had a credit balance of only $5.99 in defendant bank, and had to meet two acceptances of $2,500 each in favor of plaintiff! due that day. Accordingly it deposited its check on the Canal Bank for $4,-900, and then drew its own check on defendant for $5.000 to take up the two acceptances aforesaid. Hence the overdraft of $94.01 at the close of business on Monday July 11th of which we made mention above. But no complaint was made of this.
 

 V.
 

 Thus the Naval Stores Company was overdrawn on the morning of Tuesday July 12th for only $94.01. On the other hand, at the close of business on that day, as shown by the same Appendix B, it was overdrawn full $1,596.68, which came about in the manner which we will presently relate. But none the less its business with the bank continued as usual, and its overdraft was allowed, as we have said, to increase $178.75 in the next ten days.
 

 VI.
 

 The overdraft at the close of business on July 12, 1921, came about in this way. Some days before July 12th the Naval Stores Company had discounted at the Canal Bank a draft for $10,000 against a like credit for
 
 *911
 
 which it had arranged in New York City, and thus had an apparent credit in said Canal Bank sufficient to take care of said cheek. But said credit in New York failed to materialize, and hence the draft came back, thus wiping out said apparent credit at the Canal Bank, whereupon the Canal Bank refused payment on the aforementioned check for $4,-900 drawn upon it by the Naval Stores Company and returned same to the defendant some time
 
 before
 
 2 o’clock on July 12th, thus causing the overdraft at the close of business on that day. But no notice-of the return of said check by the Canal Bank was given by defendant to the Naval Stores Com- . pany.
 

 VII.
 

 Some time
 
 after
 
 2 o’clock defendant received two telegrams, one from plaintiff and one from the Grant State Bank, advising defendant that they would honor cheeks upon them by [subsidiaries of] the Naval Stores Company for $2,450 and $950, respectively, and the Naval Stores Company was promptly notified thereof. Thereupon, at about 3 o’clock that evening, the Naval Stores Company sent to defendant two checks drawn in accordance with the tenor of said two telegrams, together with its own check on defendant for $3,500 to take up the two acceptances of $2,500 and $1,000, respectively, in favor of said two banks.
 

 VIII.
 

 The two country checks of $2,500 and $1,-000 were duly forwarded by defendant and honored in due course. But the $3,500 check, though received at the same time as the two checks aforesaid, was not honored by defendant ; which, however, retained said check as well as the two acceptances which it was intended to take care of.
 

 The Naval Stores Company was not notified by defendant that the check on the Canal Bank had come back, nor that its check for $3,500 had not been honored; and neither of said checks was ever returned to it, but both were retained by defendant until the trial of this case. And plaintiff was not informed that its acceptance of $2,500 had not been paid until August 4th, when, in 'Checking up a statement of its account sent by defendant, it observed that it had not been given credit for the amount thereof, and made inquiry concerning the same; and said acceptance was not actually sent back to plaintiff until October 7th.
 

 And of course it is quite immaterial’whether all this occurred by the mere negligence of one of defendant’s employees or through instructions received from some superior officer as claimed by the employee charged with said negligence.
 

 IX.
 

 From all these circumstances it is our conclusion, without questioning the good faith of all parties, that the recital given by the vice president of the Naval Stores Company of what occurred on .July 12th correctly sets forth the facts thereof.
 

 In the first place his testimony accords with the course of business between the Naval Stores Company and defendant as it continued for the ten days after July 12th, when the Naval Stores Company Was allowed to draw against its deposits of each day, notwithstanding that it was already overdrawn and that its overdraft was even thereby slightly increased daily; and it is not claimed that any change in the arrangements previously existing were then made. In the next place the affairs of the Naval Stores Company, in which he was then vitally interested, were then approaching a crisis, and the affairs of that company were then his main, if not his sole, concern. So that what then took place with reference to said affairs must have been firmly impressed upon his mind. And it may be added that he has no interest whatever in the result of this controversy, first, because the Naval Stores Company was clearly and confessedly liable in any event for the amount of these accept
 
 *913
 
 anees; and, secondly, because admittedly the Naval Stores Company became bankrupt shortly thereafter and has since gone out of existence.
 

 On the other hand the transaction was a comparatively small one in the affairs of the defendant, which is one of the “big” banks of the South, and was one of “hundreds of thousands during the year.” So that it is not to be expected that the details thereof should be remembered as clearly by the bank officials as by one to whom the transaction meant so much at the time; and the fact is, as we observed at the beginning, that they were not familiar with the status of the Naval Stores account as t'o prior overdrafts, and have confused that matter with this transaction, with which such prior overdrafts had no connection whatever.
 

 X.
 

 The testimony of the vice president of the Naval Stores Company is that in the forenoon of July 12th he went to the defendant bank to see about taking up the two acceptances due that day ($2,500 and $1,000) and was told that the only way he could do so would be to have his checks certified by the banks on which they were drawn; that he thereupon, by telephone, asked plaintiff and the Grant State Bank if they would honor checks upon them for $2,450 and $950, respectively ; that they agreed to do this, and promised to wire to that effect to defendant; that the additional overdraft of $100 [over the $94.01 of the evening before] was agreeable to defendant; that he was notified by defendant as soon as it received the two telegrams from plaintiff and from the Grant State Bank; and that he then sent the two checks for deposit and at the same time his own check to take up the two acceptances.
 

 XI.
 

 We therefore conclude that the two country checks thus accepted were not deposited in general account for the purpose of covering the overdraft occasioned by the return of the check upon the Canal Bank, but were deposited as a special credit against which the Naval Stores Company might draw for the purpose of taking up the two acceptances due that day; and hence that the judgment appealed from is erroneous.
 

 Decree.
 

 The judgment appealed from is therefore reversed, and it is now ordered that there be judgment in favor of plaintiff, the Merchants’ & Farmers’ Bank of Natchitoches, and against defendant, the Marine Bank & Trust Company of New Orleans, for the full sum of $2,500, with legal interest from July 12, 1921, until paid, and all costs of both courts.
 

 Ó’NIELL, C. J., dissents.
 

 Appendix A.
 

 Showing condition of checking account of Jennings Naval Stores Company with Marine Bank
 
 &
 
 Trust Company at close of business each day for the fifty-four days' preceding Tuesday, July 12, 1921, to wit, from Thursday, May 19th, to Monday, July 11th, both inclusive, as follows:
 

 Thursday, May 19; credit balance .......$4,534 35
 

 Friday, May 20; credit balance....... 3,455 39
 

 Saturday, May 21; credit balance....... 1,957 S3
 

 Monday, May 23; overdraft ............ 49 35
 

 Tuesday, May 24; overdraft ............ 2,604 60
 

 Wednesday, May 25; credit balance ....... 596 09
 

 Thursday, May 26 ; credit balance ....... 596 34
 

 Saturday, May 28; ■ credit balance ....... 434 13
 

 Monday, May 30; credit balance ....... 404 93
 

 Tuesday, May 31; credit balance ....... 618 18
 

 Thursday, June 2; credit balance ....... 5,645 01
 

 Saturday, June 4; credit balance ....... 3,068 OS
 

 Monday, June 6; credit balance....... 110 08
 

 Tuesday, June 7; credit balance....... 640 78
 

 Wednesday, June S; credit balance....... 632 38
 

 Thursday, June 9; credit balance ....... 622 71
 

 Friday, June 10; credit balance ....... 922 71
 

 Wednesday, June 15; credit balance ....... 849 52
 

 Thursday, June 16; credit balance....... 953 26
 

 Saturday, June 18; credit balance ....... 853 26
 

 Monday, June 20; credit balance ....... 819 21
 

 Tuesday, June 21; credit balance ....... 664 16
 

 Wednesday, June 22; credit balance ....... 410 23
 

 Thursday, June 23; credit balance....... 104 92
 

 Friday, June 24; overdraft ............ 346 09
 

 Monday, 'June 27; overdraft ............ 564 52
 

 Tuesday, June 28; credit balance....... 131 32
 

 
 *915
 
 Wednesday, June 29 credit balance .. 131 10
 

 Thursday, June 30 credit balance .. 134 20
 

 Friday, July 1 credit balance .. 434 20
 

 Saturday, July 2 credit balance .. 423 31
 

 Thursday, July 7 overdraft ....... 19 01
 

 Friday, July 8 credit balance .. 5 99
 

 Monday, July 11 credit (opening). 5 99
 

 Monday, July 11 O/D (close) ..... 94 01
 

 Note. — The days omitted are those pn which the account remained inactive, including seven Sundays and two holidays, June 3d and July 4th.
 

 Appendix B.
 

 Showing movement in checking account of Jennings Naval Stores Company on Monday, July 11, 1921, and Tuesday, July 12, 1921, as follows:
 

 Monday, July 11, 1921.
 

 Credit balance at opening......... $ 5 99
 

 Credit: Check on Canal Bank.... 4,900 00 $4,905 99
 

 Debit: Chock for 2 acceptances, $2,500 each 5,000 00
 

 Overdraft at close............................ $ 94 01
 

 Tuesday, July 12, 1921.
 

 Overdraft at opening.......................... $ 94 01
 

 Debit: Cheek on Canal Bank returned..... 4,900 00
 

 Overdraft after cheek returned (1-2, p. m.) $4,994 01 Credit: 2 checks, $2,450 plus $1,000 — total
 

 $3,500 (2-3, p. m.), net...................... 3,397 33
 

 Net overdraft at close........................ $1,596 68
 

 Appendix C.
 

 Showing condition of checking account of Jennings Naval Stores Company with Marine Bank & Trust Co. at close of business each day from the close of business on Monday, July 11, 1921, to Friday, July 22, 1921, as follows:
 

 Monday, July 11; overdraft ............$ 94 01
 

 Tuesday, July 12; overdraft ............ 1,596 68
 

 Wednesday, July 13; overdraft ........ 1,600 84
 

 Thursday, July 14; overdraft ............ 4,115 84
 

 Friday, July 15; overdraft ............ 1,684 09
 

 Monday, July 18; overdraft ............ 1,698 99
 

 Thursday, July 21; overdraft ............ 1,736 46
 

 Friday, July 22; overdraft ............ 1,775 43
 

 Note. — The increase of $178.75 in the overdraft at the close of business on Friday, July 22, 1921, over that of Tuesday, July 12, 1921, advanced in small amounts from day to day, except that on July 14th the bank honored a check for $2,500 (to take up an acceptance in favor of the First National Bank of De Ridder) against a credit realized only on the next day, thus accounting for the big increase in the overdraft on July 14th and corresponding decrease on the next day. Aside from this difference of one' day in this credit ($2,-448.75), the account moved as follows: